## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**DOUGLAS A. TURNS,**

       **Petitioner,**

    **v.**                            **Case No. 2:04-cv-769**
                                        **Crim. No. 2:99-cr-104(1)**
                                        **JUDGE GRAHAM**

**UNITED STATES OF AMERICA,**        **Magistrate Judge KING**

       **Respondent.**


## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255.  On August 26, 2005, all of petitioner's claims were dismissed, with the exception of his claim of ineffective assistance of counsel due to his attorney's failure to call alibi witnesses and failure to advise petitioner that he could plead guilty without testifying against co-defendants.  Doc. No. 155.  Counsel was appointed on petitioner's behalf and, on February 21, 2006, an evidentiary hearing was held regarding those claims.  Post-hearing briefs have been filed by petitioner and respondent.  Doc. Nos. 191, 197, 198.

For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## I.  PROCEDURAL HISTORY

The facts and procedural history are summarized in the prior *Report and Recommendation*, August 2, 2005, Doc. No. 145.  As previously discussed, the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 involves petitioner's February 8, 2000, convictions

after a jury trial on conspiracy to commit armed bank robbery, aiding and abetting armed bank robbery, and aiding and abetting the use of a firearm during and in relation to armed bank robbery. On June 9, 2000, petitioner was sentenced to an aggregate term of 858 months.  On May 12, 2004, the United States Court of Appeals for the Sixth Circuit affirmed petitioner's convictions and sentence.  *United States v. Beverly,* 369 F.3d 516 (6th Cir. 2004).  On October 27, 2004, the United States Supreme Court denied petitioner's petition for a writ of *certiorari*.  Doc. No. 135.

## II.  MERITS

Only two issues remain for this Court's consideration: Petitioner's claim that he was denied the effective assistance of counsel because his attorney failed to advise him that he could plead guilty without testifying against co-defendants Johnny Crockett and Ike Beverly, and  Petitioner's claim that he was denied the effective assistance of counsel because his attorney failed to call certain defense witnesses.

Petitioner appears to have withdrawn the latter claim from federal habeas corpus review. Petitioner presented no argument regarding such issue at the evidentiary hearing, or in post-evidentiary hearing briefs.  In any event, the claim is without merit.

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th

Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might e considered sound trial strategy." *Strickland*, 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*, at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland,* 466 U.S. at 697.

Petitioner asserts that defense witnesses Anthony Trinca, Melvin Cobb and Stanton Cordell -- had they been called to testify – would have corroborated his alibi defense and discredited Anthony Rogers and Melvin Warren, co-defendants who testified against him pursuant to the terms of their plea agreements.  Petitioner has presented affidavits from these witnesses in support of this claim. *See Report and Recommendation*, August 2, 2005, Doc. No. 145.

Petitioner alleges that Trinca would have testified that, on August 3, 1995, the day that the Huntington National Bank in Marysville, Ohio, was robbed, Trinca saw Turns at 9:00 a.m. cleaning his apartment and was with petitioner from 11:00 a.m. until 1:00 p.m. that same day *See id.,* at 14. At trial, Rogers testified that he and Melvin Warren robbed the Marysville bank with petitioner acting as the getaway driver.  Petitioner has now admitted his involvement in this bank robbery. *Transcript*, *Evidentiary Hearing*, at 115-116.

Petitioner alleged that Mel Cobb would also have testified that he saw petitioner on

September 27, 1994, when the Delaware County Bank in Ashley, Ohio, was robbed.  Petitioner

continues to deny involvement in the Ashley, Ohio, bank robbery.  *Id.*  Cobb's affidavit states in

relevant part:

> I... was present with Douglas Turns and Laurencine Alexander at the
> beauty shop of Ms. Darlene Mathews on Cleveland Ave. On
> September 27, 1994, between the hours of 9:00 a.m. and 12:00 noon
> at which time I left Ms. Alexander, and Mr. D. Turns.
>
> I know the date because Mr. Turns loaned me $500.00 cash to
> purchase school clothes for my children.

*Exhibit 11 to Petition; see Report and Recommendation*, August 2, 2005, Doc. No. 145, at 14.  The

Delaware County Bank was robbed at approximately 10:50 a.m.  *Trial Transcript*, at 215, 218.

Petitioner also alleged that Cordell would have supported petitioner's allegation that he had

no involvement in the September 27, 1994, robbery of the Delaware County Bank.  Cordell's

affidavit states in relevant part:

> [O]n September 26, 1994, I... was in possession of one 1987 Blazer
> two tone gray with two doors owned by Douglas A. Turns.  I installed
> a water pump, and winterized the above Blazer.
>
> I received the Blazer sometime in the late morning before noon on
> September 26, 1994, at my place of employment, 525 Kennedy Dr.,
> Columbus, Ohio 43215.
>
> I finished repairs on Mr. Douglas Turns' Blazer September 27, 1994,
> in the evening hours.  Mr. Douglas Turns picked his Blazer up
> between 8:00 p.m. and 9:00 p.m. September 27, 1994.

*Exhibit 12 to Petition.*

As previously discussed, *see Report and Recommendation*, August 2, 2005, Doc. No. 145

at 16, Rogers testified at trial that he and Turns drove to Cincinnati in Turns' gray Chevrolet Blazer

the night before the Delaware County Bank robbery to steal a car to use in robbing the bank.  *Trial*

*Transcript,* at 884, 1066.  Rogers stole a Chevrolet Blazer, and followed Turns back to Columbus

in the stolen vehicle.  Rogers parked the stolen Blazer behind the house where he was staying at the

time.  *Id.*, at 882-883.  The following day, Rogers used the stolen Blazer to rob the bank, and

abandoned the stolen vehicle afterwards, making his getaway with petitioner who waited for Rogers

in another car.[1]  *Id.*, at 883-884.  Defense witness Laurencine Alexander, petitioner's sister, said that

she met petitioner at 8:30 a.m. on September 27, 1994, the day of the Delaware County Bank

robbery, for her first subcontracting job.  *Id.*, at 1884-1885.  Mel Cobb also was there.  *Id.*, at 1886.

They were removing debris from a building.  *Id.*  She worked from 8:30 a.m. until 3:00 p.m., and

petitioner was present the entire time.  *Id.*  Petitioner testified in his own behalf, and denied any

involvement in any of the robberies.  According to petitioner, on the day of the Delaware County

Bank robbery he was overseeing a remodeling job at the Beauty All Over beauty shop for Darlene

Matthews[2] with Alexander and Cobb.  *Id.*, at 2001-2002.  He remained at that location from 8:30

a.m. until 3:30 p.m.  *Id.*, at 2002.

Although defense counsel stated in his January 6, 2005, affidavit that he did not recall any

potential defense witnesses that had not been called at trial, *see Affidavit of Gary Deeds, Exhibit* A

*to Return of Writ,* at the evidentiary hearing, Deeds recalled that he had not called Trinca or Cobb

as defense witnesses because, after speaking with them, he concluded that they would not assist the

---

[1]  Starla Turns, who was living with Rogers at the time, saw the apparently stolen Blazer parked in her back yard.  *Id.*, at 1866.  She first noticed the car at night.  *Id.*  According to Starla, the next morning, at 8:00 a.m., Rogers drove the vehicle away, and Melvin Warren followed.  *Id.*, at 1867.  On cross-examination, Rogers said that petitioner borrowed Starla's car to use as the getaway vehicle in the Delaware County Bank robbery.  *Id.*, at 1066.

[2]  Matthews did not testify at trial, and petitioner does not contend that she would have testified for the defense.

defense.  Deeds was unable to contact Cordell.  Deeds stated:

> With respect to Mr. Cordella [sic]... Mr. Rogers testified that the day before the Ashley robbery he and Mr. Turns took Mr. Turns' vehicle down to Cincinnati to steal a car.
>
> And Mr. Turns was indicating he was lying, because my car was in the shop and that Mr. Cordella [sic] was the person that repaired the vehicle.  And I don't believe I was able to get a hold of him.
>
> And I know looking back on it, I probably should have used our investigator to get a hold of him.
>
> With respect to the other two, Dinket [sic], that was his landlord and... I talked with him on the phone and I came to the conclusion that he was not certain of the date.  And so I didn't want to use him.
>
> And Mr. Cobb, who came to my office, I talked with him a little bit. And then I gave him a subpoena.  He was at the courthouse and I talked to him again.
>
> And based on my information with him at the courthouse, I wasn't convinced that he was not certain of the date.  So I decided not to call him, because he was the other witness, I think.

*Transcript*, *Evidentiary Hearing*, at 85-86.

Deeds' strategic decision not to call Cobb or Trinca as defense witnesses after speaking with them is entitled to deference.  "In assessing deficient performance, reviewing courts must take care to avoid 'second-guessing'" strategic decisions that failed to bear fruit." *Lundgren v. Mitchell*, 440 F.3d 754, 770 (6th Cir. 2006), citing *Strickland v. Washington, supra*, 466 U.S. at 689.

> In order to avoid second-guessing trial counsel's strategic decisions, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052 (internal quotation marks and citation omitted). Accordingly, "an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken." *Campbell[ v. Coyle],*

6

260 F.3d at 551.

*Moss v. Hofbauer,* 286 F.3d 851, 859 (6th Cir. 2002).

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. *Strickland,* 466 U.S. at 690-91, 104 S.Ct. at 2066. *See also Meeks v. Bergen,* 749 F.2d 322 (6th Cir.1984)

*White v. McAninch*, 235 F.3d 988, 985-96 (6th Cir. 2000).

Further, even assuming that counsel acted unreasonably in not making further attempts to contact Stanton Cordell, petitioner has failed to establish that he was prejudiced under *Strickland.* "[T]he failure to call witnesses or present other evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Chegwidden v. Kapture*, 92 Fed.Appx. 309, 311 (6th Cir. March 18, 2004). Such are not the circumstances here.

Even assuming that Rogers was mistaken regarding which car petitioner had used to drive Rogers to Cincinnati the night before the Delaware County Bank robbery would not necessarily have discredited Rogers' testimony as to petitioner's involvement in the bank robbery. The jury chose to disbelieve Laurencine Alexander's testimony that petitioner was with her on the day that the Delaware County Bank was robbed.

As to petitioner's claim that he was denied the effective assistance of counsel because his attorney failed to advise him that he could plead guilty without testifying against co-defendants, at

7

the evidentiary hearing, petitioner testified:

> I asked [Deeds] if I had to testify against my co-defendants... Crockett and Beverly. And he says the government always wants something. And I told him that I could not testify against... Crockett and Beverly because I didn't know Crockett and Beverly.
>
> And that was about the end of it.

*Id.*, at 126; 139-40. Petitioner also alleges that Deeds never explained that he could be found guilty even if the jury concluded that he had acted only as the getaway driver. *Id.,* at 127. Such allegations, along with petitioner's assertion that he would have accepted the plea offer of ten years had he known that he did not have to testify against co-defendants, are belied by the record before this Court.

The affidavit of defense counsel Gary Deeds, submitted in response to petitioner's allegations, indicates in relevant part:

> 2. In the course of my representation... I had numerous discussions with [petitioner] concerning the government's interest in pursuing a plea.
>
> 3. At all times... he expressed no interest in a plea agreement and continuously expressed his desire to go to trial.
>
> 4. Prior to the bank robbery trial, CR-2-99-104, in January 1999, I discussed the ramifications of convictions on multiple counts of 18 U.S.C. §924(c). I specifically pointed out that he would be facing the equivalent of a life sentence. He responded to this discussion by indicating his continued desire to go to trial and profess his innocence.
>
> 5. I brought to the attention of Douglas Turns, the offer of the government that a plea agreement might result in a term of ten years in federal prison. Douglas Turns responded with a statement, in essence, that ten years was the same to him as a life sentence.
>
> 6. On more than one occasion after the indictment, my explicit advice to Douglas Turns was to take the pleas offered by the

government, and he refused to consider a plea and indicated he wanted a trial.

7.  In the first trial, the 1998, [sic] two witnesses, Anthony Rogers and Warren, testified against the defendant and he was convicted. Prior to the second trial, I indicated to Mr. Turns that the jury believed Rogers and Warren the first time and thus he had to consider that it was likely the jury would believe him [sic] the second time. I also indicated that the stakes were much higher due to the gun charges under 18 U.S.C. §924(c). Mr. Turns responded by indicating his continued desire to go to trial.

8.  I estimate that prior to the bank robbery trial in January 1999, I had a[t] least a half a dozen (or more) conversations with Mr. Turns regarding the plea interest of the government. All conversations resulted in the same assertion by Mr. Turns that he wanted a trial.

\*\*\*

10.  I did not discuss with Mr. Turns the possibility of an *Alford* plea.

11.  In one of my discussion[s] with Mr. Turns, I explained to him that because of the gun charges (18 U.S.C. §924) he was looking at the equivalent of a life time term. His response was that he was innocent and wanted to take the matter to trial.

*Respondent's Reply Brief, Attachment A,* Doc. No. 197. The record further reflects that, on May 11, 1998, Assistant United States Attorney Michael Marous wrote Deeds asking whether petitioner would be interested in pleading guilty to one bank robbery and one charge under 18 U.S.C. §924(c) "without a motion for substantial assistance." *Defendant's Exhibit B*. On January 5, 2000, after petitioner's conviction in a prior criminal case had been affirmed by the United States Court of Appeals for the Sixth Circuit, Deeds wrote petitioner asking if petitioner would reconsider pleading guilty:

... [I]n light of the adverse decision by the 6th Circuit, Mr. Marous has asked me if you would now consider a plea agreement in which you would probably be looking at 10 years imprisonment on the bank robbery case as opposed to a potential of 60 if we lose.

*Id., Defendant's Exhibit C.*  At the evidentiary hearing, Deeds repeatedly testified that petitioner refused to discuss  any plea offer, despite Deed's advice that a guilty plea would be in petitioner's best interest.  According to Deeds, petitioner responded that he was innocent and ten years in prison would be the same as a life sentence.

> Q. [F]rom July 20th of 1999, until the actual trial occurred, like seven, eight months later, do you recollect having discussions with Mr. Turns dealing with plea offers?
>
> A.  I recollect attempting to talk to him many times about it and being cut off, and talking to him in substance about it several times.
>
> ***
>
> ... [M]ost of the time when I would br[o]ach the subject of a plea offer he didn't want me to talk to him about it, he would cut me off and say, "I'm not pleading guilty to any of it.  I don't want to talk about it.  I don't want to talk about it."  I received a lot of those responses from him.

*Transcript, Evidentiary Hearing,* at 36.

> We went through the case and... as I explained the case to him... that the government can easily prove the bank robbery and through Rogers and Warren they did the bank robbery, they can prove beyond a reasonable doubt that the weapons are involved, because these people are going to testify that the weapons are involved.  And all they have to do is bring him in as the driver and anything else he did four times, and that he is absolutely responsible for everything that Warren and Rogers did, including carrying the gun.
>
> And I explained to him, that is why he would, in effect, get a life sentence if he is convicted.  You know, that was explained.

*Id.*, at 38.

Deeds did not recall telling petitioner that he would have to testify against co-defendants in order to obtain the benefit of a plea agreement.

> Q.  Do you remember discussing with Mr. Turns the idea that he

10

would not have to testify against anyone in this case?

A. ... [W]hat I indicated to him is that... subsequent to the '98 letter and in '99, that it was plausible that if he knew anything about Crockett or Beverly they might have him to testify.

Q. So you're saying that he did recognize the fact that if he did take the plea offer there would be some possibility that he would have to testify against Crockett and Beverly?

A. Only if he knew something about it.  And he said he didn't know anything.

***

Q. So it's possible that Douglas Turns, before he went to trial in the bank robbery case, felt that he had to testify against Beverly and Crockett then?

A. I wouldn't think so, because basically.... he said he didn't [know anything about them].  I said that would be only if he knew something.

It [sic] wasn't indicating you have to testify against everyone even though you don't know anything about them....

***

I never said that to him.

*Id*., at 39-40.  Deeds' testimony is supported by the government's May 1998 letter to Deeds, and Deeds' January 2000 letter to petitioner, neither of which contain any reference to the requirement that petitioner testify against co-defendants. Deeds testified:

The problem is he didn't want to discuss a guilty plea.

***

We couldn't go into downward departure because... he wasn't going to plead guilty to bank robbery.

[H]e didn't want to plead guilty.

11

*Id*., at 48.

> We never got beyond the fact that... he indicated that... doing ten years to him was the same as a life sentence and he wasn't interested.

*Id.*, at 60.

> Basically... I told him, if he gets convicted he's going to have a life sentence effectively because the judge doesn't have discretion.  And you look at all those years piled on whatever you're going to get.  With the bank robbery business it is 65.  And he [was] like 39 or 40 at the time....
>
> ***
>
> His response was [that] he wanted to go to trial because he's not guilty.  That was basically his response to about everything, he was not guilty.
>
> ***
>
> Q. [D]id he ever say ten years is too much, I want eight years, anything like that?
>
> A. [T]he one thing he indicated... that ten years to him is the same as life.

*Id.,* at 74-76.

> Q.  And your advice to him was to take a plea.
>
> A.  My advice was a plea agreement, yes.
>
> Q. ... [H]is response to your recommendation was what?
>
> A.  Wanted to go to trial.

*Id*., at 77; *see also id.*, at 81.

> [When you confronted him with the evidence, it was stacked up against him, he continued to profess his innocence?
>
> To my knowledge he has professed his innocence completely right through to today.... He has always said he is not guilty of all the

charges.

*Id.*

The Magistrate Judge finds Deeds' testimony to be credible.  Petitioner's testimony, on the other hand, is unworthy of credit.

Despite his prior adamant protestations of innocence, petitioner conceded at the evidentiary hearing that he indeed was the getaway driver in three of the four bank robberies.  *Id.*, at 115-116. He admitted that he lied in his testimony at trial in his statements to F.B.I special agent Harry Trombitas and in his conversations with his attorney by denying any involvement in the bank robberies.  *Id*., at 159.  On May 30, 2000, petitioner wrote the public defender as follows

> In December 1996 the federal attorneys offered me a deal.  Serve 10 years in prison or go to trial and face 100 years in prison.  I had not done anything, so needless to say, I turned them down.
>
> ***
>
> My court appointed lawyer was on their side.  He wanted to plea [sic] and take the deal.
>
> Even with all the odds against me I walked into court for two weeks to defend myself....

Exhibits C and E to Return of Writ; *Attachment E.*  Petitioner's letter to the public defender likewise discredits his allegations here.  At the evidentiary hearing, petitioner conceded that he never told his attorney that he would be interested pleading guilty so long as he was not required to testify against co-defendants.  *Id*., at 156.  Further, and contrary to petitioner's argument here, *see Petitioner's Reply to Government's Post Hearing Response*, petitioner stated that he would not have accepted the government's plea offer of ten years in any event:

> Q.  You told [Deeds] that ten years to you was the same as a life sentence?

13

A.  Yes.  Yes.

Q.  And so you were not interested in a ten year plea?

A.  No.  I wasn't interested in going to jail for ten years.

***

I wouldn't have been interested in anything, no, not if it was ten years.

***

If I would have had to serve ten years, I wasn't interested.

***

If the government's offer was ten years and I had to serve eight and a half, I would have taken the plea.

***

Q. [Y]our attorney, Gary Deeds, informed you that if you go to trial you could do 60 or 70 years; he did tell you that, right?

A.  60 years.

Q.  And the government was interested in having you plead to what he described as possibly ten years; is that correct?

A.  Yes.

Q.  And in your mind at that time, even though you told him you were innocent and you weren't interested in ten years, in your mind if you had eight and a half years your testimony is you would have said yes?

A.  Yes.

Q.  And for a year and a half's time you didn't make an inquiry to your attorney about how about a little less than ten?

***

14

> A.  No.
>
> Q.  In fact, you told him, I'm innocent, I want the trial, right?
>
> A.  I told him I was innocent.

*Id*., at 169-170.

> Q.  Gary Deeds wanted you to take that plea offer that was out there for you, didn't he?
>
> A.  Yes.
>
> ***
>
> Q.  And he made it clear to you that if you go to trial you're facing 60 or more years if you lose and go to trial?
>
> A.  Yes.  Yes.

*Id.*, at 173-174.  Thus, by petitioner's own admission, he refused to consider the plea offer because it would result in a prison term of ten years.

Petitioner also argues that trial counsel improperly failed to provide petitioner with a written plea agreement, failed to properly or often enough convey the terms of the plea offer, failed to discuss the issue of good time credits, and failed to attempt further plea negotiations with the government.  *See Post Trial Memorandum of Petitioner; Reply to Government's Post Hearing Response*.  In view of the record, petitioner's arguments are not persuasive.  Any failure by defense counsel to further pursue plea negotiations or to further discuss or clarify with petitioner the terms of a possible guilty plea did not constitute the ineffective assistance of counsel in view of petitioner's flat refusal to discuss a guilty plea.  *See Humphrey v. United States*, unpublished, 2005 WL 2002361 (N.D. Ohio August 19, 2005)(No ineffective assistance of counsel for failure to discuss sentencing guidelines due to defendant's "staunch refusal to consider a plea"), *Attachment G to*

15

*Government's Post Hearing Response.*

> Defendants have a constitutional right to effective assistance of counsel during plea negotiations. *Hill v. Lockhart,* 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The two-prong ineffective assistance of counsel analysis that the Supreme Court announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to claims that counsel's performance was constitutionally deficient during plea negotiations. *Hill,* 474 U.S. at 58, 106 S.Ct. 366. A petitioner who claims that he was denied effective assistance of counsel with regard to whether or not to plead guilty must prove that (1) counsel rendered constitutionally deficient performance, and (2) there is a reasonable probability that but for counsel's deficient performance, the petitioner would have pled guilty. *Magana v. Hofbauer,* 263 F.3d 542, 547- 48 (6th Cir.2001) (citing *Turner v. Tennessee,* 858 F.2d 1201, 1206 (6th Cir.1988)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

*Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005).  Petitioner has failed to meet this standard here.

An attorney's failure to insist that his client accept the government's plea offer due to overwhelming evidence of guilt does not constitute constitutionally ineffective assistance. *Smith v. United States, supra*, 348 F.3d at 552.

> The decision to plead guilty--first, last, and always--rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction.

*Id.*  The United States Court of Appeals for the Sixth Circuit has described the obligations of defense counsel as it relates to advice during the plea negotiations stage as follows:

> A criminal defendant has a right to expect at least that his attorney

16

> will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available. In a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time.

*Id.*, at 553, citing *United States v. Day,* 969 F.2d 39, 43 (3d Cir.1992).  The record reflects that defense counsel met these obligations.  Petitioner refused to consider a plea and insisted on going to trial.  The fact that petitioner may now regret his decision will not provide a basis for relief.

Petitioner's claim of ineffective assistance of counsel is without merit.

### III.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that petitioner's remaining claims of ineffective assistance of trial counsel be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation*

will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

<u>*s/Norah McCann King*</u>
Norah McCann King
United States Magistrate Judge

<u>May 15, 2006</u>