IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

    v.                                    Case No. 2:99-cr-104-1

Douglas Turns

OPINION AND ORDER

    Defendant was convicted at trial on one count of conspiracy to commit bank robbery, four counts of armed bank robbery, and four counts of using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §924(c). By judgment entered on June 9, 2000, defendant was sentenced to a term of incarceration of 78 months on the conspiracy and bank robbery counts, to run concurrently, and a total of 65 years on the consecutive firearms counts. Defendant was also charged in Case No. 2:98-cr-13 with possessing and transferring a machine gun at a pawn shop. In that case, a sentence of 27 months was imposed, to run concurrently with the sentence imposed in the instant case.

    On January 23, 2020, defendant filed a motion for reduction of sentence or compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act of 2018, alleging extraordinary and compelling reasons. Doc. 305. By order dated January 30, 2020, the court stayed ruling on the motion because there was no showing that defendant had exhausted his administrative remedies under that section. Doc. 307. Defendant filed a motion to lift the stay on February 26, 2020, along with a declaration that he had exhausted his administrative remedies. Doc. 308. On March 4, 2020, the court ordered the government to respond to the motion. Doc. 309. On March 30, 2020, the defendant filed an emergency amendment to his motion for compassionate

release, citing, for the first time, the risks posed by the COVID-19 epidemic and a recent tuberculosis diagnosis. Doc. 310.

The government filed a response on May 4, 2020, opposing both motions. Doc. 314. Attached to the government's motion is the March 6, 2020, decision of the warden concluding that defendant's December 16, 2019, request for compassionate release: did not provide extraordinary or compelling circumstances; defendant's release would minimize the severity of his offenses; defendant had served less than 50 percent of his sentence; and defendant was not suffering from any chronic or serious medical condition which hinders his ability to function within a correctional facility. Doc. 314-1, p. 3. The government also submitted the April 29, 2020, decision of the warden denying defendant's request for compassionate release based on the COVID-19 pandemic. A memorandum addressed to the warden indicated that: defendant's medical conditions of Type II diabetes, polyneuropathy secondary to frostbite, neuralgia, and hyperlipidemia were medically managed within accepted medical practices; that only defendant's Type 2 diabetes met the guidelines of the Centers for Disease Control ("CDC") for high risk from COVID-19; and that defendant did not require assistance with his daily activities. Doc. 314-2, pp. 2-3. The warden noted that the "BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates" and that his concerns about being potentially exposed to or contracting COVID-19 did not currently warrant defendant's early release. Doc. 314-2, p. 4.

By order dated May 18, 2020, the court concluded that defendant had not shown that he had exhausted his administrative

remedies in regard to his request for compassionate release due to his tuberculosis diagnosis, and denied the March 30, 2020, amendment without prejudice.  Doc. 315.

The court addressed defendant's other grounds for compassionate release listed in defendant's January 23, 2020, motion for compassionate release, including his health conditions, primarily the symptoms of Type II diabetes; his status as a disabled veteran; his age (59); the fact that his daughter had passed away and his granddaughter was being cared for by her grandmother; and the change in penalties for §924(c) counts under §403(a) of the First Step Act.  The court found that these circumstances did not satisfy the criteria for extraordinary and compelling reasons under Application Note 1 to United States Sentencing Guidelines ("U.S.S.G.") §1B1.13.[1]  The court also recognized that if defendant were sentenced today based on the current §924(c) penalties, he would be sentenced to consecutive terms of imprisonment of five years on each of the four §924(c) counts, resulting in a total sentence of 26-1/2 years.  However, the court noted that defendant had been in custody since February 7, 2000, and that, even giving defendant the benefit of the new §924(c) penalties and the maximum amount of good time credit, defendant would still have additional time to serve on his sentence.

---

[1]The Sixth Circuit has since held that the policy statements contained in §1B1.13 do not apply to cases in which an inmate files a motion for compassionate release, and that district courts have full discretion to define what constitutes an "extraordinary and compelling" reason without consulting the policy statement.  See United States v. Jones, 980 F.3d 1109, 1111 (6th Cir. Nov. 20, 2020).

Because the circumstances relied on by defendant in his January 23, 2020, motion were insufficient to establish an extraordinary and compelling reason for a sentence reduction at the time of the court's order, the court did not address the factors under 18 U.S.C. §3553(a) and denied the motion. However, the court denied the motion without prejudice, noting that the posture of the case and the weight to be assigned to the sentencing factors might change based on any additional evidence defendant might submit after exhausting his administrative remedies regarding his March 30, 2020, motion. On August 31, 2020, defendant filed pro se motions for reconsideration of the denial of his motions for compassionate release and submitted additional documents and medical records. See Docs. 320 and 321.

On June 4, 2020, counsel was appointed to represent the defendant. On October 13, 2020, counsel filed a motion for compassionate release based on defendant's health problems. Doc. 325. Counsel noted that defendant had been diagnosed with Type II diabetes, polyneuropathy due to frostbite and diabetes, neuralgia, hyperlipidemia, GERD, latent tuberculosis infection, coronary artery disease (angina) and astigmatism/presbyopia, that his right shoulder was surgically repaired, that he requires the use of a cane, and that he is debilitated by pain. Counsel argued that defendant is at high risk for serious illness due to COVID-19, and that his medical conditions constitute extraordinary and compelling reasons for a reduction in sentence. Counsel further argued that defendant does not pose a danger to the community.

The government filed a response in opposition to defendant's motions for compassionate release on November 18, 2020. Doc. 331.

The government agreed that defendant has exhausted his administrative remedies, but opposed defendant's motions for release. The government argued that although defendant has various medical conditions, and that Type II diabetes and heart disease put an individual at increased risk from COVID-19, the BOP has appropriately managed defendant's medical care and addressed defendant's medical needs; that COVID-19 has been successfully managed at FCI Otisville, where defendant is incarcerated; that the statutory sentencing factors, particularly the seriousness of these offenses, weigh against early release; and that defendant cannot show that he would not pose a danger to the community.[2]

The court has reviewed all of the medical records and other documents submitted. The court will consider all of the grounds for compassionate release advanced by the defendant.

I. Standards for Compassionate Release

Under 18 U.S.C. §3582(c)(1)(A)(i), the court can reduce a sentence under §3582(c)(1)(A) if the court finds that "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. §3582(c)(1)(A)(i). District courts have full discretion to define what constitutes an "extraordinary and compelling" reason. Jones, 980 F.3d at 1111. The court must also consider the factors set forth in 18 U.S.C. §3553(a) to the extent that they are applicable. §3582(c)(1)(A). District courts may deny relief under §3582(c)(1)(A) based upon the court's discretionary balancing

---

[2]Under U.S.S.G. §1B1.13, a reduction may be ordered if "the defendant is not a danger to the safety of any other person or to the community[.]" U.S.S.G. §1B1.13(2). The court is not required to apply the criteria in §1B1.13, see Jones, 980 F.3d at 1111, although protection of the public is a relevant factor under 18 U.S.C. §3553(a).

5

of the §3553(a) factors even if extraordinary and compelling reasons would otherwise justify relief. United States v. Ruffin, 978 F.3d 1000, 1008 (6th Cir. 2020). If, after weighing the §3553(a) factors, the court decides that the motion is well taken, the court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)[.]" §3582(c)(1)(A). The grant of compassionate release is at the discretion of the court. United States v. Kincaid, 802 F. App'x 187, 188 (6th Cir. 2020).

II. Grounds for Compassionate Release

A. Change in §924(c) Penalties

The first basis for compassionate release argued by defendant in his January 23, 2020, motion was the change to the penalties for firearm offenses in 18 U.S.C. §924(c)(1)(C) under §403 of the First Step Act. As this court stated in its order of May 18, 2020, even assuming that this change in the law can constitute an extraordinary and compelling reason for a sentence reduction, if defendant were sentenced today based on the current §924(c) penalties, he would be sentenced to consecutive terms of imprisonment of five years on each of the four §924(c) counts, resulting in a total sentence of 26-1/2 years. Defendant has been in custody since February 7, 2000, almost 21 years. Even giving defendant the benefit of the new §924(c) penalties and the maximum good time credit of fifty-four days per year provided under 18 U.S.C. §3624(b)(1), approximately 3.1 years, defendant would still have additional time to serve on his sentence. Based on these circumstances, the change in the §924(c) penalties does not provide

6

an extraordinary and compelling reason for defendant's release at this time. See United States v. Brown, 411 F.Supp.3d 446, 454-55 (S.D. Iowa 2019)(denying motion where defendant would still be in prison even if the First Step Act penalties were applied). In fact, releasing defendant on this ground would result in a sentencing disparity with defendants who are currently being sentenced for §924(c) offenses. Therefore, the court adheres to its prior ruling in the May 18, 2020, order. However, the court notes that it will consider the current penalties for the §924(c) offenses in determining the seriousness of those offenses when addressing the §3553(a) statutory sentencing factors below.

B. Death of Caregiver

Defendant notes that his daughter passed away on October 20, 2019, and that his granddaughter as well as two other grandchildren are being cared for by defendant's spouse. Defendant seeks to assist with the care of his grandchildren. However, defendant does not allege that his daughter's death left his granddaughter without a caregiver. See United States v. Thorpe, No. 1:08-cr-10027, 2019 WL 6119214, at *2 (C.D. Ill. Nov. 18, 2019)(release denied where defendant did not allege that his child would be left without a caregiver). The court adheres to its previous ruling that these circumstances do not constitute extraordinary and compelling reasons for compassionate release.

C. Defendant's Health and Medical Conditions

In the order of May 18, 2020, the court noted that defendant's age and health conditions did not meet the criteria for extraordinary and compelling reasons set forth in U.S.S.C. §1B1.13 and Application Note 1. The court concluded that the medical

7

records submitted by defendant did not weigh significantly in favor of compassionate release. However, under Jones, the criteria in §1B1.13 need not be considered by the court, and are not controlling. Defendant has also submitted additional medical records for the court's consideration, and has exhausted his administrative remedies concerning the additional threat posed by COVID-19. Therefore, the court will consider whether defendant's age and health conditions and the threat of COVID-19 constitute extraordinary and compelling reasons for defendant's early release.

Defendant, who is 60 years old, argues that his medical conditions warrant compassionate release. In his October 13, 2020, motion, counsel noted that defendant had been diagnosed with Type II diabetes, polyneuropathy due to frostbite and diabetes, neuralgia, hyperlipidemia, GERD, latent tuberculosis infection, coronary artery disease (angina) and astigmatism/presbyopia; that his right shoulder was surgically repaired; that he requires the use of a cane; that he is debilitated by pain, and that he is at high risk for serious illness due to COVID-19. Doc. 325. Defendant has alleged that he has no feeling in the bottoms of his feet, and has to wear special shoes. Doc. 305, pp. 7-8. The records reveal the following information:

1. Angina Pectoris

On June 5, 2017, defendant was seen by a cardiologist for a stress test following a diagnosis of angina pectoris. Doc. 320-10, pp. 5-6. No record of the results of the test are included. On July 27, 2020, plaintiff complained about cough, chest discomfort and shortness of breath and was told that he would be seen by the medical providers. Doc. 320-11, pp. 1-3. No further records

regarding this complaint were provided. The record includes a medical report dated June 7, 2020, which indicated that defendant could engage in some cardiovascular exercises. Doc. 320-5, p. 3.

2. Rotator Cuff Repair

The records include a report relating to surgery to repair defendant's right shoulder rotator cuff. The surgery was completed without complication. Doc. 320-5, p. 13; Doc. 320-6, p. 1. No other information was provided concerning this surgical procedure. Defendant claims that he still experiences shoulder pain, and an April 14, 2020, medical review noted that defendant was currently having physical therapy. Doc. 320-2, p. 1.

3. Foot Problems

Defendant has submitted a rating decision from the Department of Veterans Affairs, which determined that defendant's frostbite injury to his feet, with symptoms of pain, numbness, and cold sensitivity, was 10 percent disabling. Doc. 320-5. New shoes were ordered on July 23, 2019. Doc. 320-5, p. 1-12. On January 6 and 7, 2020, defendant reported a shooting pain in his feet and was prescribed medication. Doc. 320-5, pp. 5-10; Doc. 320-6, p. 3; Doc. 320-7, pp.1-3. On May 13, 2020, defendant was seen for ankle and foot pain, as well as vitamin D deficiency, trouble urinating, and problems with sleeping. Doc. 320-7, p. 4. Medication was prescribed and prior medication orders were renewed. Doc. 320-7, pp. 6-7.

A summary prepared for the warden on February 26, 2020, indicated that defendant does not require assistance with his daily activities and is currently medically managed within accepted medical practices. Doc. 314-1, p. 2. A medical report dated June

9

7, 2020, The report stated that defendant wears knee braces and custom made medical shoes and uses a cane. Doc. 320-5, p. 3. A reentry plan dated June 12, 2020, reported that work restrictions included no excess cold and no food service work. Doc. 320-10, p. 2. The plan stated that defendant had not worked since 2016 due to problems with his feet. Doc. 320-9, p. 8.

### 4. Hearing Problems

On February 18, 2020, defendant complained about hearing problems, and an audiology evaluation was ordered. Doc. 320-8, p. 5; Doc. 320-9, p. 3. The results of the evaluation are not included in the record.

### 5. Tuberculosis

The record includes a treatment summary indicating that on December 20, 2002, defendant tested positive for tuberculosis. This test indicated that at some point in his life, defendant was exposed to tuberculosis. Doc. 320-3, p. 1. A chest x-ray on January 3, 2003, and subsequent x-rays showed no evidence of cardiopulmonary disease. On February 19, 2020, defendant began receiving a tuberculosis prophylactic treatment consisting of a course of medication for twelve weeks completed on May 12, 2020. Doc. 320-3; Doc. 321-3, pp. 3-4. No further records were provided concerning this treatment or why the decision was made to go forward with this treatment, other than an administrative note in a record dated February 18, 2020, that defendant "has history of positive PPD." Doc. 321-3.

### 6. Risk of Covid-19

A medical review dated April 14, 2020, noted that defendant has Type II diabetes, polyneuropathy secondary to frostbite and

10

diabetes, neuralgia, hyperlipidemia, a rotator cuff repair with current physical therapy, and the use of a cane. Doc. 320-2, p. 1. Staff physician Alphonso Linley, M.D., indicated that defendant did not have a terminal, incurable illness resulting in a life expectancy of less than 18 months, but that he did have an incurable, progressive illness and was limited in his activities. Doc. 320-2, p. 2. Dr. Linley also noted that defendant was at risk of serious illness due to COVID-19 due to his diabetes and hyperlipidemia.[3] Doc. 320-2, p. 2.

In regard to defendant's risk due to COVID-19, the government notes that there have been few cases of COVID-19 at FCI Otisville, where defendant is incarcerated.  There are 607 inmates at FCI Otisville.  See www.bop.gov/locations/institutions/otv/ (last visited January 14, 2021).  There are currently three inmates and six staff members who have tested positive, 24 inmates and 15 staff members who have recovered, and no deaths.  See https://www.bop.gov/coronavirus (last visited January 14, 2021). According to a letter from defendant's exwife, defendant would reside with their daughter in Columbus, Ohio. Doc. 321-9, p. 1. The Ohio Department of Health reports that as of January 14, 2021, there have been 95,485 COVID-19 cases in Franklin County, and 1,400 cases in the zip code where defendant's daughter resides.  See

---

[3]Although persons with Type II diabetes have a risk of serious illness if they contract COVID-19, hyperlipidemia is not on the CDC's list of medical conditions which result, or may result, in increased risk. See www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited January 15, 2021).

11

https://www.coronavirus.ohio.gov (last checked January 14, 2021).[4]

Despite the fact that the risk currently posed by COVID-19 at defendant's institution may be low, the court concludes that defendant is nonetheless at increased risk due to his Type II diabetes. Viewing the defendant's medical conditions as a whole, the court concludes that defendant's medical conditions are sufficient to constitute "extraordinary and compelling" reasons which would justify an early release.

II. Statutory Factors

In light of the nature of the offenses of conviction, the court finds that the offenses were serious. According to the presentence investigation report ("PSR"), the conspiracy in this case spanned from March, 1994, through November, 1995, and included four bank robberies. The robbers engaged in threatening conduct which traumatized bank customers and employees, including jumping over the teller counter, brandishing pistols and holding their firearms to tellers' heads, and ordering and/or shoving customers and tellers to the floor and physically restraining them. Defendant did not enter the banks. Rather, he drove the robbers to the vicinity of the banks, then went to a pre-arranged location and picked them up. The robberies resulted in a loss of $224,866 to the banks, and defendant shared equally in the proceeds of the robberies. In Case No. 2:98-cr-13, defendant was convicted of possessing and transferring an automatic weapon.

---

[4]This court can take judicial notice of the records of state agencies. See Disabled Rights Action Committee v. Las Vegas Events, Inc., 375 F.3d 861, 866 n. 1 (9th Cir. 2004)(citing Kottle v. Northwest Kidney Centers, 146 F.3d 1056, 1064 n. 7 (9th Cir. 1988)(state health department records were properly judicially noticed)).

12

The §924(c) offenses involving the use of firearms were also serious. At the time of defendant's convictions, the first offense carried a consecutive penalty of 5 years, and each of the additional offenses carried consecutive penalties of 20 years. Defendant was sentenced to a total of 71.5 years. However, under the First Step Act, Congress limited these enhanced penalties to defendants who already had a conviction under §924(c) in a prior case, and determined that the lesser penalty of 5 consecutive years for each §924(c) count charged in the same prosecution was sufficient to address the seriousness of those offenses. Defendant has served approximately 21 years. If the new §924(c) penalties were in effect, defendant's sentence would be 26.5 years. Considering 3.1 years of good time credit, defendant would have 2.4 years remaining on his sentence. The reduced sentence requested by defendant would be sufficient to address the seriousness of the offenses.

As to the history and characteristics of the defendant, at the time of his convictions for the offenses in this case, defendant was in Criminal History Category I. The PSR indicates that defendant was in the army from February, 1979, to June, 1983, and obtained his GED. He was then employed for approximately 15 years in the home maintenance/repair business. He had no history of alcohol or substance abuse. He submitted a reentry plan which indicates that he has completed 55 courses while incarcerated. Doc. 308-1, pp. 19, 21. While incarcerated, he had two minor disciplinary infractions for possessing gambling paraphernalia and phone abuse/disruption of monitoring, the most recent in 2016. Doc. 305-1, pp. 2-3. According to a letter from defendant's

exwife, defendant would reside with their daughter in Columbus, Ohio. Doc. 321-9, p. 1. The warden's April 27, 2020, decision indicated that defendant is a medium/in custody inmate scored with minimum risk recidivism. Doc. 314-2, p. 2.

A reduced sentence would be sufficient to promote respect for the law, to provide just punishment, and to afford adequate deterrence. The shortened sentence sought by defendant would also be sufficient to protect the public from more crimes by the defendant. In light of defendant's age and his health conditions, his efforts towards rehabilitation and his predominantly good conduct while in prison, he is unlikely to engage in further criminal activity if he is released.

The court concludes that the §3553(a) factors warrant granting defendant's motion for a reduced sentence.

IV. Conclusion

In accordance with the foregoing, defendant's motions for compassionate release (Docs. 320, 321 and 325) are granted. Defendant's motion to expedite (Doc. 328) is moot. The terms of incarceration previously imposed on Counts 1 through 5 and Counts 14 through 17 of the indictment are hereby reduced to terms of time served. The court orders that the defendant shall be released from custody. This order is stayed for fourteen days from the date of this order to facilitate the BOP's ability to quarantine defendant to protect the community from the potential spread of COVID-19.

The court will also impose a new term of supervised release of five years, which will commence upon defendant's release from incarceration. The standard conditions in this district will apply. As an added measure of protection of the public, as a

special condition of supervised release, the defendant will be placed on the home detention component of the location monitoring program for a period of one year.  While on home detention in the location monitoring program, the defendant will be restricted to his residence at all times, except for medical appointments and other activities pre-approved by the officer.  The defendant shall be monitored by the use of location monitoring technology at the discretion of the probation officer.  Following the end of this five-year term of supervised release, the defendant shall begin to serve the three-year terms of supervised release previously imposed in this case.

    Defendant is instructed that he must report to the probation office in the federal judicial district where he is authorized to reside within 72 hours of his release from imprisonment, unless the probation officer instructs him to report to a different probation office or within a different time frame.  Defendant shall call the Probation Office at (614)-719-3100 to receive instructions on how to report.

January 21, 2021                                    s/James L. Graham
                                                         James L. Graham
                                                         United States District Judge